BLAKE G. HALL, ESQ.
SAM L. ANGELL, ESQ.
CORY R. STEGELMEIER, ESQ.
HALL ANGELL & ASSOCIATES, LLP
1075 S Utah Avenue, Suite 150
Idaho Falls, Idaho 83402
Telephone (208) 522-3003
Fax (208) 621-3008
*ISB Nos. 2434, 7012, and 10095*
bgh@hasattorneys.com
sla@hasattorneys.com
crs@hasattorneys.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE ESTATE OF MATTHEW PLANER, a deceased individual; DEBORAH WILLIAMS, personal representative of the Estate of Matthew Planer and heir of Matthew Planer,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF POCATELLO; CHIEF ROGER SCHEI; SERGEANT RICH SAMPSON; OFFICER BREYVON JOHNSON,<br><br>Defendants. | Case No. 4:24-cv-284-BLW<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

COME NOW Defendants, CITY OF POCATELLO, CHIEF ROGER SCHEI,

SERGEANT RICHARD SAMPSON, and OFFICER BREYVON JOHNSON, by and through

their attorneys of record, Hall Angell & Associates, LLP, and hereby submit their reply

memorandum in support of their motion for summary judgment. In so doing, Defendants

incorporate fully by reference the arguments made in opposition to Plaintiff's motion for

summary judgment.

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1

## ARGUMENT

**I.    Plaintiff's version of events is not supported by the recording in this case.**

In opposition to the Defendants' motion for summary judgment, Plaintiff has made a

number of factual allegations which are simply not supported by the recorded video in this case.

Most glaringly, Plaintiff attempts to argue that Mr. Planer was acting in self defense and not in a

threatening manner when he picked up the knife and held it in a threatening manner.

> Sampson drove Mr. Planer to the point where he had no other option but to take
> reasonable actions against a trespasser who had unlawfully seized and falsely
> imprisoned him. If anything, Mr. Planer was acting within the confines of legal
> self-defense.

(Dkt. 31-1 p. 19). While the Court must construe facts in favor of the non-moving party, the

Court need not accept statements which are clearly contradicted by the available video evidence.

When viewing the facts in a light most favorable to the nonmovant, the Court is "limited to

considering what facts the officer[s] could have known at the time of the incident." *Sabbe v.

Washington Cnty. Bd. of Commissioners*, 84 F.4th 807, 816 (9th Cir. 2023).

> Our analysis proceeds from the perspective of a reasonable officer on the scene and
> must allow for the fact that police officers are often forced to make split-second
> judgments—in circumstances that are tense, uncertain, and rapidly evolving—
> about the amount of force that is necessary in a particular situation. . . [W]e do not
> credit a party's version of events that the record, such as an unchallenged video
> recording of the incident, quite clearly contradicts.

*Id.* (internal quotations and citations omitted).

A thorough review of the video in this case directly contradicts Plaintiff's version of

events. Mr. Planer was not acting in self defense when he picked up the knife. Mr. Planer's

actions were not innocent but were threatening. Mr. Planer clearly held the knife above his head

and stunted forward in a manner which would cause any reasonable person to believe that they

were about to be stabbed. The video in this case shows a threatening action much more clearly

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2

than the video in *Sabbe*. Because Plaintiff's versions of events are contradicted by the clear video evidence, the Court should disregard any claims not supported by the video.

## II.    Plaintiff cannot show that her alleged unlawful entry and seizure claims survived Mr. Planer's death.

From the outset of this case, Plaintiff has attempted to blame Sergeant Sampson for Mr. Planer's decision to grab a knife and threaten to stab Sergeant Sampson. In so doing, Plaintiff ignores the Supreme Court's finding that Constitutional Rights are "personal in nature and cannot be asserted vicariously." *Van Orden v. Caribou Cnty.*, No. 4:10-CV-385-BLW, 2011 WL 841438, at *2 (D. Idaho Mar. 4, 2011) (citing *Shelley v. Kraemer,* 334 U.S. 1, 22 (1948)). Plaintiff concedes that the Supreme Court, Ninth Circuit, and this Court have consistently held that, when a constitutional violation does not cause the death of an individual, the claim only survives that individual's death when the state has a survivor statute.

In addition to this Court's finding in *Van Orden*, there are multiple other cases where the Idaho Supreme Court has reiterated that Section 1983 claims only survive an individual's death when those claims caused the death. *Hoagland v. Ada County*, 154 Idaho 900, 908, 303 P.3d 587, 595 (2013); *Evans v. Twin Falls County*, 118 Idaho 210, 216, 796 P.2d 87, 93 (1990). Plaintiff does not address the Idaho Supreme Court's findings in *Hoagland* or *Evans*. Instead, Plaintiff tries to argue that they can recover nominal damages under Idaho Code section 5-327. A review of that statute shows that it does not authorize a claim for nominal damages. In fact, the damages addressed in Idaho Code section 5-327 are extremely limited and do not include nominal damages.

Plaintiff next attempts to use the Ninth Circuit's language in *Sabbe* to support her claim that she can pursue a claim for nominal damages even when the alleged constitutional violation

did not cause the death. In relying on the language in *Sabbe*, Plaintiff neglects to note that the events in *Sabbe* occurred in Oregon and were not analyzed using Idaho's statutes. *See Sabbe*, 84 F.4th 807. While the discussion in *Sabbe* is useful as it relates to the causation and superseding causes, it is not helpful when it comes to the survivability of a Section 1983 claim which is governed by state statute. Because Mr. Planer's death was caused by his decision to grab a knife and threaten to stab Sergeant Sampson and not by any alleged unlawful entry or seizure, all claims related to actions which occurred before Mr. Planer suddenly grabbed the knife must be dismissed.

### III.    Sergeant Sampson's use of force was reasonable when considering the *Graham* factors.

As already discussed in detail in Defendants' memorandum in support of summary judgment and memorandum in opposition to Plaintiff's motion for summary judgment, Sergeant Sampson's use of force was reasonable. In opposition to summary judgment, Plaintiff asks this Court to ignore the video and accept her version of events. The Court is not required to accept a version of events not supported by the video evidence. The video clearly shows that Mr. Planer was armed when he was shot. It also shows that when armed, he made a furtive threatening motion toward Sergeant Sampson. "When a suspect is armed—or reasonably suspected of being armed, even a furtive movement can create an immediate threat sufficient to justify the use of deadly force." *Sabbe*, 84 F.4th at 828 (internal quotations and omissions omitted).

To avoid unnecessary repetition, Defendants incorporate their analysis already presented to the Court. Some key points that the Court should consider is that Mr. Planer was armed with a knife when he was shot. (Dkt. 25-3 Ex. C; Dkt. 25-4 Ex. A). Mr. Planer was less than five feet away from Sergeant Sampson when he picked up the knife and stunted forward in a threatening

manner. (Dkt. 25-4 ¶ 25). The video evidence and unrebutted expert report of Mr. Bloodgood clearly establish that Sergeant Sampson did not use excessive force and all claims in this case should be dismissed.

## IV.     Defendants are entitled to qualified immunity.

The Ninth Circuit has clearly held that when a suspect is armed and makes a furtive movement towards police officers, it creates an immediate threat of injury which justifies the use of deadly force. *Sabbe*, 84 F.4th at 828. The undisputed facts in this case shows that before being shot, Mr. Planer suddenly armed himself and made a threatening furtive movement towards Sergeant Sampson. Contrary to Plaintiff's argument, there is no question of fact regarding this issue. The video is undisputed evidence that Mr. Planer, without warning, grabbed a knife and stunted forward causing Sergeant Sampson to reasonably believe that he was about to be stabbed. There is no caselaw which would support Plaintiff's position that an officer violates the constitutional rights of someone who suddenly grabs a knife when they are less than five feet away and is shot. A review of the video in this case and the applicable caselaw shows that Sergeant Sampson is entitled to qualified immunity.

Officer Johnson and Chief Schei are likewise entitled to qualified immunity. Plaintiff concedes that neither were present when excessive force was exercised. Indeed, Chief Schei was not aware of the event until after the fact. Additionally, the video shows that Officer Johnson never entered Mr. Planer's apartment or detained him. Sergeant Sampson was the lead contact with Mr. Planer. While claims regarding the alleged unlawful search and seizure do no survive Mr. Planer's death, even if they did, there is no evidence that Officer Johnson or Chief Schei ever violated Mr. Planer's rights and they are entitled to qualified immunity.

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5

**V.     Plaintiff's failure to train claim must be dismissed as Plaintiff has failed to show that an alleged failure to train caused Mr. Planer's death.**

In opposition to the motion for summary judgment, Plaintiff concedes that she cannot identify a pattern of constitutional violations necessary to support her failure to train claim. Instead, Plaintiff asks this Court to find, based on a single incident, that there was a failure to train. Plaintiff bases this request on one line in *Connick v. Thompson*, 563 U.S. 51 (2011), where the Supreme Court noted that there may be a ***rare*** case where "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of pre-existing conditions." *Id.* at 64.

This case is not one of the "rare" exceptions to the rule, and Plaintiff must prove a pattern of violations. The alleged constitutional violation that Plaintiff wishes to base the failure to train claim on in this case did not cause Mr. Planer's death. Plaintiff claims that the alleged seizure of Mr. Planer while the police were investigating his interaction with the elderly neighbor shows a failure to train. However, that alleged event did not cause his death, and as discussed at length above, did not survive Mr. Planer's death. Mr. Planer's death was not caused by a failure to train but by his conscious decision to grab a knife and make a threatening movement toward Sergeant Sampson.

Plaintiff next tries to claim that the officers were trained not to give a verbal warning. This ignores the City's policies as well as the testimony of Sergeant Sampson. It is undisputed that the City requires the issuance of a verbal warning when reasonable. This is identical to the Ninth Circuit's caselaw which requires a verbal warning when practicable. Mr. Planer did not receive a verbal warning because Sergeant Sampson simply did not have time to do so. Less than two second passed from the time the knife was drawn and when the shot was fired. Sergeant

Sampson was caught completely off guard by Mr. Planer's decision to grab a knife and threaten to stab him. The suddenness of Mr. Planer's aggressive, threatening conduct when he grabbed the knife left Sergeant Sampson with no time to issue a verbal warning. Because Plaintiff concedes that there is no pattern of similar violations, and because the alleged failure to train did not cause Mr. Planer's death, the failure to train claim should be dismissed.

**VI.     Plaintiff has failed to show that any alleged unconstitutional violation caused Mr. Planer's death as required for *Monell* liability.**

In support of her *Monell* claim, Plaintiff claims that because Sergeant Sampson did not have time to give a verbal warning after Mr. Planer suddenly grabbed the knife, that the City's policy requiring a verbal warning when reasonable is not constitutional. The language of the City's policy as well as the training provided to the officers shows that the *Monell* claim should be dismissed.

"[W]henever practicable, a warning must be given before deadly force is employed." *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997). "A prior warning is all the more important where . . . the use of lethal force is contemplated." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1137–38 (9th Cir. 2019). The lack of a verbal warning is not dispositive but only a factor which can be considered by the Court. *Id.*

The City of Pocatello has not adopted any policy or procedure that allows for the excessive use of force. (Dkt. 25-3 Ex. D Schei Depo. 17:4–24). All officers involved in this incident are POST certified and receive regular training on the requirements for the use of deadly force. (Dkt. 25-3 Ex. D Schei Depo. 17:4–24). Sergeant Sampson testified that prior to the incident at issue in this case, he was not only trained in that policy but had also served as an instructor for use of force trainings. (Dkt. 25-3 Ex. A Sampson Depo. 21:12–16). Sergeant

Sampson was involved in weekly caselaw and policy reviews. (Dkt. 25-3 Ex. A Sampson Depo. 15:4-15). The City's policy requiring a warning when reasonable tracks with the Ninth Circuit's requirement for a warning "whenever practicable." As such, the *Monell* claim should be dismissed.

## VII.    Plaintiff's state law claims are barred.

It is undisputed that all state law claims against the City of Pocatello must be dismissed as the City is immune under Idaho Code section 6-904. In her opposition, Plaintiff concedes that this claim arises out of an alleged battery but argues that the facts show that Sergeant Sampson acted with malice. While, as set forth below, there is no evidence to overcome the presumption set forth in Idaho Code section 6-903(5), even if Plaintiff could present facts to support a finding of malice, the state law claims against the City must still be dismissed.

Under Idaho law, immunity for a governmental entity for the causes of action listed in Idaho Code § 6-904 is absolute. *Hoffer v. City of Boise*, 151 Idaho 400, 402-3 (2011), *see also Limbert v. Twin Falls County*, 131 Idaho 344, 346 (Ct. App. 1998). The employees of a governmental entity may be liable for such actions only if the employees act outside the scope of employment or act with "malice" or "criminal intent." *Hoffer*, 151 Idaho at 402-3. The *Hoffer* court further held that "[t]he plain language of the first clause of that section exempts governmental entities from liability for the torts it lists, whether or not there has been an allegation of malice or criminal intent." *Id.* at 402. Thus, regardless of any allegation of malice, the City of Pocatello is absolutely immune from all state law claims in this case.

Sergeant Sampson, Officer Johnson, and Chief Schei are also immune from all state law claims in this case. Idaho Code section 6-903(5) creates a presumption that all actions taken within the time and place of employment are done without malice or criminal intent. Plaintiff has

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8

failed to present any evidence which would support a finding of malice in this case. Plaintiff has not even argued that Officer Johnson or Sergeant Schei acted with malice, thereby entitling them to immunity.

Plaintiff, using the Idaho Criminal Code, argues that there is evidence that Sergeant Sampson acted with malice when he fired his weapon in self-defense. However, this "evidence" does not amount to even a scintilla and is not sufficient to overcome the presumption set forth in Idaho Code section 6-903(5). Sergeant Sampson is entitled to a presumption that his actions were without malice. Plaintiff bears the burden of presenting sufficient evidence to overcome this presumption.

Throughout this case, Plaintiff has attempted to use Sergeant Sampson's use of profanity to not only show that he had time to issue a verbal warning but to also show malice. As set forth at length in the unrebutted expert report of Matthew Bloodgood, Sergeant Sampson's use of profanity is nothing more than a startled response to the deadly threat posed by Mr. Planer. "SAMPSON'S one word statement while drawing his handgun is consistent with a startle or shock response to the perceived deadly threat posed by PLANER." (Dkt. 25-4 Ex. A p. 80).

Sergeant Sampson did not use profanity to express any form of malice, but because he was not expecting Mr. Planer to grab a knife and threaten his life. Mr. Planer's decision to draw a knife was entirely unforeseeable and caught Sergeant Sampson off guard. The fact that Sergeant Sampson used profanity when his life was suddenly threatened does not overcome the presumption in Idaho Code that his actions were without malice. Because Plaintiff has failed to rebut the presumption that Sergeant Sampson was acting without malice, all Defendants are entitled to immunity for any and all state law claims under Idaho Code section 6-904.

## **CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court grant its motion for summary judgment, deny Plaintiff's motion for partial summary judgment, and dismiss Plaintiff's claims in their entirety.

Dated this 11th day of May 2026.


___/S/_____
SAM L. ANGELL

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing document upon the following on May 11, 2026, by electronically filing with the Clerk of the Court using CM/ECF system with a Notice of Electronic Filing to the following persons:

Kyle R. May
Brayden K. Cochran
MAY RAMMELL & WELLS, CHTD
216 W Whitman
Pocatello, ID 83204
Email: kyle@mrwlaw.net
Email: brayden@mrwlaw.net


___/S/_____
Sam L. Angell