UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

THE ESTATE OF MATTHEW PLANER, a deceased individual; DEBORAH WILLIAMS, personal representative of the Estate of Matthew Planer and heir of Matthew Planer,

Plaintiffs,

v.

CITY OF POCATELLO; CHIEF ROGER SCHEI; SERGEANT RICH SAMPSON; OFFICER BREYVON JOHNSON,

Defendants.

Case No. 4:24-cv-00284-BLW

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

Plaintiffs, Estate of Matthew Planer and Deborah Williams, personal representative and heir of Mr. Planer, move to strike (Dkt. 33) portions of the report drafted by Defendants' expert witness Matthew Bloodgood (Dkt. 25-4).

Plaintiffs specifically identify pages 35-38, 67-68, and 81-101[1] as containing legal opinions and conclusions that Segreant Sampson's use of force was reasonable. For the reasons discussed below, the Court will grant the motion in part and deny it in part.

## BACKGROUND

On January 27, 2023, Defendants Sergeant Rich Sampson and Officer Breyvon Johnson of the Pocatello Police Department were dispatched to an apartment building located at 729 W. Center Street, Pocatello, Idaho, in response to a disturbance call. Upon arrival, the officers were met by a resident of the building, who informed them that Mr. Planer had confronted her and briefly took her phone. Sergeant Sampson knocked on the door of Unit 302 and contacted Planer.

In their Complaint, Plaintiffs allege that despite Mr. Planer's repeat refusal to speak with the police, Sergeant Sampson unlawfully entered Mr. Planer's apartment and seized him. The officers decided to cite Mr. Planer. Plaintiffs further allege that Sergeant Sampson began to yell at Mr. Planer and positioned himself in Mr. Planer's doorway.

---

[1] The PDF contains both a declaration by Mr. Bloodgood and the report attached as an exhibit. The page numbers provided are those stamped on the report by CM/ECF, rather than the pages on the report itself.

All within the span of approximately two seconds, Mr. Planer grabbed a knife out of his sink, causing Sergeant Sampson to step back and draw his service weapon. Sergeant Sampson fired a single shot, hitting Mr. Planer in the chest and fatally wounding him.

Plaintiffs filed suit against the City of Pocatello, Roger Schei, Chief of the Pocatello Police Department, Sergeant Sampson, and Officer Johnson, alleging wrongful death and various theories of negligence pursuant to Idaho state law, as well as constitutional violations under 42 U.S.C. § 1983.

Defendants moved for summary judgment. Dkt. 25. In support of their motion, they submitted a declaration of their use of force expert witness, Matthew Bloodgood, and his written report. Dkt. 25-4. Plaintiffs now move to strike portions of Bloodgood's report, arguing that the challenged portions violate Federal Rule of Evidence 704(a).

## LEGAL STANDARD

Expert testimony is permitted if the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a). Rule 704(a) states that an expert witness's opinion "is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). However, an expert witness cannot provide an opinion as to a

legal conclusion, that is, an ultimate issue of law. *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002) *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014) (en banc). If the terms used by an expert witness do not have a specialized meaning in law and do not represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case, the testimony is not an impermissible legal conclusion. *U.S. v. Diaz*, 876 F.3d 1194, 1198-99 (9th Cir. 2017).

With respect to inadmissible legal opinions, the question is whether the terms used by the expert witness have a specialized meaning in law or represent an attempt to instruct the jury on the law, or how to apply the law to the facts of the case. *Huer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1059 (9th Cir. 2024) (citing *Diaz*, 876 F.3d at 1199). In the context of excessive force cases, there is a fine line that separates proper and improper opinions on ultimate issues, and "the distinction turns on the helpfulness to the trier of fact in view of the specific circumstances of the case." *Galindo v. Tassio*, 2014 WL 12693525 at *4 (N.D. Cal. June 19, 2024).

## ANALYSIS

### A. Pages 35–38

In this section, Bloodgood states that Pocatello police officers are:

> trained and guided by standards as determined by clearly established law in [United States Supreme Court] decisions, such as *Graham v. Connor* 490 U.S. 386 (1989), Federal law, Federal Appeals Court rulings, and relevant state or local laws.
>
> PPD Policy addresses several of the issues agencies address through training and policy from the *Graham v. Connor* ruling, which is the controlling case for an officer's use of force.[2]

The report then compares language from *Graham* concerning objective reasonableness, the necessity of making split-second judgements and decisions, the "test of reasonableness," and additional physical or situational factors considered by other circuit courts. For each of these topics, Bloodgood provides a comparison to the language of materials used in the Idaho POST Use of Force training course.

The Court will not strike the portions of the report that compare the language of *Graham* to the POST materials. These comparisons do not provide a legal conclusion; they merely demonstrate how Idaho police training is designed to comport with *Graham*. Bloodgood's comparison of law enforcement training materials written to reflect court precedents does not address the reasonableness of Sampson's conduct. Rather, they only serve as a foundation for opinion "as to standard law enforcement practices and whether [Sampson's] conduct is in accord

---

[2] The Court will strike "which is the controlling case for an officer's use of force" as a legal conclusion.

with those practices."

However, to the extent that Mr. Bloodgood's report opines that an officer who acts in accordance with the training materials discussed in this portion of the report acted reasonably, that is stricken. *Dold v. Snohomish Cnty.*, 2023 WL 123335 at *3 (W.D. Wash. Jan. 5, 2023).

**B. Pages 67 and 68**

These pages contain a list, much of it comprised of quotations taken by Bloodgood of a publication by Michael Brave entitled *Recordings and Reasonableness in the Moment, not 20/20 Hindsight* (July 28, 2024).[3] That article, in turn, quotes Cal. Penal Code §835; *Tucker v. City of Shreveport*, 998 F.3d 165 (5th Cir. 2021); *Cunningham v. Shelby Cnty.*, 994 F.3d 761 (6th Cir. 2021); *Poole v. City of Shreveport*, 13 F.4th 420 (5th Cir. 2021); and *Lopez v. Sheriff of Cook Cnty.*, 993 F.3d 981 (7th Cir. 2021). The Court will strike numbers 3, 9, 10, 11, and 12 of the list.

Number 3 on the list cites Cal. Penal Code §835. This statute dictates how the use of force by an officer is to be evaluated in California. California law is simply irrelevant here. Fed. R. Evid. 401. Number 9, 10, 11, and 12 provide

---

[3] Available at: https://www.researchgate.net/publication/382636921_Brave_M_2024_Recordings_and_Reasonableness_in_the_Moment_not_2020_Hindsight_28_July_2024

examples of various courts noting precepts of the objective reasonableness test detailed in *Graham*. The portions of his report that explain the issues, considerations, and shortcomings of body-worn cameras are acceptable, but citing judicial opinions in order to caution how video footage should be used in light of *Graham* is an attempt to instruct the factfinder on the law, or how to apply the law to the facts. *U.S. v. Diaz*, 876 F.3d 1194, 1199 (9th Cir. 2017).

**C. Pages 81–101**

The Court will strike the portions detailed below.

Bloodgood states that the officers "developed arguable probable cause that PLANER committed several felony and misdemeanor offenses, which were the basis for SAMPSON to contact PLANER." Expert witnesses are barred from testifying as to whether probable cause did or did not exist. *See Quinn v. Fresno Cnty. Sheriff*, 2012 WL 2995477 at *4 (E.D. Cal. 2012) (collecting cases). The discussion of probable cause in the first two paragraphs under the "Severity of the offenses" heading is stricken.

Bloodgood the opines that Mr. Planer may have committed some criminal offenses during his encounters with the resident and with the officers. Bloodgood provides the text from the Idaho Code establishing the elements of those offenses. These are legal conclusions and prohibited under Fed. R. Evid. 704(a). *See Briggs*

*v. Yi*, 760 F. Supp. 3d 874, 900 (D. Alaska 2024). The portion of his opinion evaluating what crimes Mr. Planer may have committed on pages 81 through 83 are stricken.

On pages 84, 85, 86, 95, Bloodgood cites to caselaw that he argues supports the training materials used by the Pocatello Police Department. While Bloodgood can point out that training materials are crafted to reflect key legal precepts and standards provided by caselaw, he cannot opine that the training comports with, or is supported by, judicial opinions. Such statements are backdoor legal conclusions that the training is therefore reasonable. "A jury, not an expert, must decide whether [a police officer] deployed reasonable force under the totality of the circumstances." *Dold*, 2023 WL 123335 at *2 (collecting cases).

Similar to the list of case cites on pages 67-68, on pages 96 and 97, Bloodgood cites to caselaw to illustrate the nebulous meaning of terms such as "risk" or "threat." He then ties that variability directly to the objective reasonableness test in *Graham*. Again, this is an attempt to instruct the factfinder on the law, or how to apply the law to the facts. *Diaz*, 876 F.3d at 1199.

## ORDER

**IT IS ORDERED that:**

**1.** Plaintiff's Motion to Strike (Dkt. 33) is **GRANTED IN PART**.

**2.** The portions of Matthew Bloodgood's Expert Report (Dkt. 25-4) identified by the Court are stricken.

DATED: August 31, 2026

B. Lynn Winmill
U.S. District Court Judge